UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GIGO THOMAS,

               Plaintiff,

        - against -

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

               Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-3322 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Gigo Thomas filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. After Plaintiff filed a motion for judgment on the pleadings, the parties stipulated to remand the case to the SSA, where Plaintiff was awarded roughly $145,827 in past-due benefits. Plaintiff's counsel, Daniel A. Osborn of Osborn Law, P.C., now moves for $36,456.75 in attorney's fees pursuant to 42 U.S.C. § 406(b) ("Section 406(b)"). For the reasons explained below, Osborn's motion is granted in part and denied in part and Osborn is awarded $35,250.

## BACKGROUND

After Plaintiff was denied benefits at the agency level, Plaintiff retained Osborn and Osborn filed this action on June 6, 2022. (*See* Compl., Dkt. 1.) After Plaintiff filed a motion for judgment on the pleadings, (*see* Pl.'s Mot. J. Pleadings, Dkt. 12), the parties stipulated to remand the case to the SSA, (*see* Stipulation of Remand, Dkt. 15). The Court then awarded Plaintiff $5,400 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (EAJA Fees Order, Dkt. 18.) On June 8, 2025, the SSA mailed Plaintiff a Notice of Award letter informing him that he would receive approximately $145,827 in past-due benefits, with 25%

1

($36,456.75) withheld as possible fees for his attorney. (Osborn Decl. Ex. 4 ("Notice of Award"), Dkt. 19-5, at ECF[1] 5.) Osborn submits in his declaration that the Notice of Award letter was sent to different counsel, who represented Plaintiff before the SSA, and who then forwarded the Notice of Award letter to Osborn on June 18, 2025. (Osborn Decl., Dkt. 19-1, ¶ 13.)

By motion filed on July 2, 2025, Osborn now seeks $36,456.75 for work he and his firm performed before this Court. (Mem. Supp. Fees Mot., Dkt. 19-7, at 6.) Along with Osborn's motion, he submitted a fee agreement, demonstrating that Plaintiff retained Osborn on a 25% contingency-fee basis, (*see* Osborn Decl. Ex. 1 ("Fee Agreement"), Dkt. 19-2), and itemized time records, indicating that he spent a total of 23.5 hours litigating this matter before this Court, (*see* Osborn Decl. Ex. 2 ("Time Records"), Dkt. 19-3). $36,456.75 for 23.5 hours of work would be an effective hourly rate of $1,551.35 per hour.

## DISCUSSION

### I.   Timeliness

Motions for attorney's fees under Section 406(b) must be filed within the 14-day filing period set forth in Rule 54(d) of the Federal Rules of Civil Procedure. *Sinkler v. Berryhill*, 932 F.3d 83, 86–89 (2d Cir. 2019). The 14-day period begins to run from when "counsel receives notice of the benefits award," *id.* at 88, and the law presumes that "a party receives communications three days after mailing," *id.* at 89 n.5 (citing *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011)). Furthermore, because Rule 54(d) allows judges to extend the 14-day deadline by court order, *see* Fed. R. Civ. P. 54(d)(2)(B),

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

"district courts are empowered to enlarge that filing period where circumstances warrant," *Sinkler*, 932 F.3d at 89.

The Notice of Award letter is dated June 8, 2025, and the present motion was filed July 2, 2025, 24 days after the Notice of Award date.  Osborn claims that he did not receive the Notice of Award until June 18, 2025, when it was forwarded to him by Plaintiff's prior counsel, and submits email communications to that effect.  (Osborn Decl. Ex. 5 ("Email to Counsel"), Dkt. 19-6, at ECF 2.)  This Court and others have concluded that "starting the 14-day period when *counsel* receives notice of the benefit award is more consistent with *Sinkler*'s logic, because until counsel receives notice of the award, the amount of the award remains 'as-yet-unknown' to the relevant party filing the § 406(b) motion."  *Hanlon v. Comm'r of Soc. Sec.*, No. 18-CV-7090 (PKC), 2022 WL 103640, at *2 (E.D.N.Y. Jan. 11, 2022) (quoting *Williams v. Comm'r of Soc. Sec.*, No. 18-CV-4734 (PKC), 2021 WL 4480536, at *2 (E.D.N.Y. Sep. 30, 2021)).  Starting the clock when plaintiffs receive notice would otherwise seem inequitable.  *See id.*

Accordingly, the Court calculates the 14-day filing period from the date Osborn received the Notice of Award from Plaintiff's prior counsel.  Osborn received the Notice of Award on June 18, 2025, (Osborn Decl., Dkt. 19-1, ¶ 13; Email to Counsel, Dkt. 19-6, at ECF 2), and filed the present motion on July 2, 2025, (Fees Mot., Dkt. 19), exactly 14 days later.  The motion is thus timely filed.

## II.    Reasonableness of the Requested Fee

### A.    Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled."  42 U.S.C. § 406(b)(1)(A).  If the contingency percentage is within the 25% cap, and

3

there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) "the character of the representation and the results the representative achieved"; (2) "whether a claimant's counsel is responsible for undue delay," unjustly allowing counsel to obtain a percentage of additional past-due benefits;[2] and (3) whether the requested amount is "so large in comparison to the time that counsel spent on the case" as to be a "windfall" to the attorney. *Id.* at 849 & n.2, 853. Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

With respect to whether a fee would be a "windfall," in *Fields*, the Second Circuit emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method," and, in doing so, "indicate[d] the limits of the windfall factor." *Id.* at 854. Rather, "courts must consider more than the de facto hourly rate," because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do," *id.*; (2) "the nature and

---

[2] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake.  Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery." (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 791 (2002) (noting that "where the attorney is responsible for delay," the attorney should not be allowed to "profit from the accumulation of benefits during the pendency of the case in court"))).

length of the professional relationship with the claimant—including any representation at the agency level," *id.* at 855; (3) "the satisfaction of the disabled claimant," *id.*; and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," *id.*

In addition, if fee awards are made to a claimant's attorney under both the EAJA and Section 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht*, 535 U.S. at 796; *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients.").

## B.     Application

Here, Plaintiff retained Osborn pursuant to a 25% contingency-fee agreement.  (Fee Agreement, Dkt. 19-2, at ECF 2–3.)  There are no allegations of fraud or overreaching with respect to the retainer agreement.  Osborn seeks the full 25% of Plaintiff's past-due benefits.  At 23.5 hours of work, that would be an effective hourly rate of $1,551.35 per hour.  For the reasons explained below, the Court finds that amount to be unreasonable in the context of this case. Specifically, the Court finds that two of the windfall factors outlined in *Fields* warrant a minor downward adjustment of counsel's requested fee.

To determine reasonableness, the Court first considers "the character of the representation and the results the representative achieved." *Fields*, 24 F.4th at 849.  Here, counsel's briefing was professional and effective, (*see* Mem. Supp. Pl.'s Mot. J. Pleadings, Dkt. 12-1, at 12–15 (challenging the SSA Administrative Law Judge's Residual Functional Capacity determination as unsupported by substantial evidence)), convinced the SSA to agree to a remand, (*see* Stipulation of Remand, Dkt. 15 (stipulating to remand on the parties' agreement that the Commissioner had

failed to properly evaluate claimant's impairments)), and achieved exactly what Plaintiff hoped for—an award of past-due and future benefits, (*see* Notice of Award, Dkt. 19-5). This factor thus does not warrant a downward adjustment.

Second, the Court must determine whether counsel was responsible for unreasonable delays. *Fields*, 24 F.4th at 849. The Court notes that Osborn requested one 24-day extension to file Plaintiff's motion for judgment on the pleadings in November 2022. (Mot. for Extension, Dkt. 10.) The Court does not consider this an unreasonable delay given that it was a single request of a reasonable length for a deadline that Osborn subsequently met. *See, e.g.*, *Gray v. Comm'r of Soc. Sec.*, No. 20-CV-3916 (PKC), 2023 WL 3948796, at *3 (E.D.N.Y. June 12, 2023) (finding that "a single request of a reasonable length," such as "one thirty-day extension," does not constitute an "undue delay"); *Sestito v. Comm'r of Soc. Sec.*, No. 20-CV-3538 (PKC), 2022 WL 14760733, at *3 (E.D.N.Y. Oct. 25, 2022) (similar). This factor also does not warrant a downward adjustment.

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. The Court analyzes four factors in determining whether a requested amount qualifies as a windfall. *Id.* at 854–56.

First, with respect to "the ability and expertise of the lawyers and whether they were particularly efficient," *id.* at 854, the Court believes that 23.5 hours was a reasonable amount of time to spend on this matter. In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a de facto hourly rate of $1,556.98. *Id.* at 854. Here, Osborn performed work of a similar scale, facing a transcript of 857 pages, (*see* Admin. Tr.,

Dkt. 9), drafting an opening brief of 15 pages, (Mem. Supp. Pl.'s Mot. J. Pleadings, Dkt. 12-1), and obtaining a stipulation of remand, (Stipulation of Remand, Dkt. 15). The Court finds that this factor does not suggest that the requested fee constitutes a windfall, and, therefore, this factor does not warrant a downward adjustment.

Second, with respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *Fields*, 24 F.4th at 855, the Court notes that Osborn did not represent Plaintiff in front of the SSA before filing this suit. (*See* Osborn Decl., Dkt. 19-1, ¶ 13.) In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall. *See Fields*, 24 F.4th at 855. Here, Osborn was not retained until May 2022 and represented Plaintiff only before this Court, (*see* Osborn Decl., Dkt 19-1, ¶ 13; Fee Agreement, Dkt. 19-2, at ECF 3), and thus lacks the type of attorney-client relationship built over multiple rounds of representation that distinguished the counsel in *Fields* from other windfall cases and supported a higher de facto hourly rate. *See, e.g.*, *Schultz v. Comm'r of Soc. Sec.*, No. 18-CV-5919 (PKC), 2022 WL 2918237, at *3 (E.D.N.Y. July 25, 2022) (finding that counsel's briefing was "necessarily less efficient" when counsel did not represent plaintiff before the SSA); *Gray*, 2023 WL 3948796, at *3 (same). This factor justifies a downward adjustment.

Third, with respect to "the satisfaction of the disabled claimant," *Fields*, 24 F.4th at 855, the Court presumes that Plaintiff is satisfied with the results; there is no evidence to the contrary, and Plaintiff received the past-due benefits he sought. Plaintiff's counsel only caused a brief delay of roughly three weeks in the proceedings, far below what the Court believes would warrant

Plaintiff's dissatisfaction.  Therefore, this factor does not suggest that the requested fee constitutes a windfall.  *Contrast Gray*, 2023 WL 3948796, at *3–4 (finding that "one relatively brief delay" of 30 days does not justify a downward adjustment on the third "windfall" factor), *and Sestito*, 2022 WL 14760733, at *4 (similar), *with Schultz*, 2022 WL 2918237, at *3–4 (finding cause for dissatisfaction where counsel was responsible for delays spanning "several months," which "likely caused further hardship" to claimant).  This factor accordingly does not justify a downward adjustment.

Lastly, with respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," *Fields*, 24 F.4th at 855, the Court notes that this case was not as uncertain as the case in *Fields*, where the SSA denied the claim again even after remand.  Here, the SSA stipulated to remand after the opening brief, indicating that the case was far less uncertain than the underlying case in *Fields*, and did not require the sustained efforts of multiple rounds of representation.  The Court also notes that, despite the relatively limited representation required for this case, Osborn seeks a de facto hourly rate that is approximately the same as that awarded in *Fields*.  *Compare Fields*, 24 F.4th at 854 (awarding effective hourly rate of $1,556.98), *with* (Mem., Dkt. 19-7, at 5 (requesting effective hourly rate of $1,551.35)).  The Court finds that this, combined with the relative lack of uncertainty regarding Plaintiff's claim, warrants a downward adjustment.  *See, e.g.*, *Gray*, 2023 WL 3948796, at *4 (finding that downward adjustment was warranted where SSA stipulated to remand after the opening brief).

For the reasons explained above, the Court finds the requested amount to be unreasonable, and reduces the fee award to $35,250, which amounts to a de facto hourly rate of $1,500.  *See, e.g., id.* (awarding an effective $1,500 hourly rate for 23.7 hours of work spent on a transcript of

300 pages, an opening brief of 16 pages, and a stipulation of remand, where counsel did not initially represent Plaintiff before the SSA).

## CONCLUSION

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted in part and denied in part, and Osborn Law, P.C. is awarded $35,250.  Upon receipt of this award from the government, Osborn shall promptly refund Plaintiff $5,400, which represents the EAJA fees already received by counsel.  The case remains closed.

SO ORDERED.


*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2026
       Brooklyn, New York

9